FILED & ENTERED

MAR 20 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>C.M. Meiers Company, Inc.<br><br><br>_____ Debtor(s). | CHAPTER 11<br><br>Case No.:  1:12-bk-10229-MT<br><br>Adv No:   1:14-ap-01042-MT |
| Bradley D Sharp<br><br>                           Plaintiff(s),<br><br>    v.<br><br> Essex Insurance Company<br><br>                         Defendant(s). | **MEMORANDUM OF DECISION**<br>**RE: MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date:          December 3, 2015<br>Time:          1:00 p.m.<br>Courtroom:  302 |

     The Chapter 11 Trustee previously filed another adversary action captioned, <u>Sharp v. Herbert Rothman, et al.</u>, adversary case no. 1:12-ap-01118 MT ("Adversary Action") against C.M. Meiers' former officers and directors, Herbert Rothman, Eric Rothman and Rebecca Rothman, (the "Rothmans"). The Trustee's Complaint and First Amended Complaint ("FAC") asserted claims against the Rothmans for, among other things, acts, errors and omissions committed in regard to their Professional Services in connection with their control and management of the C.M. Meiers' ("CMM") Insurance Trust Account. The Trustee now alleges that Defendant Essex Insurance Company ("Essex") wrongfully denied the coverage provided by Essex's Insurance Agents and Brokers Errors and Omissions Liability Insurance Policy, Policy No. AB-351400 (the "Policy") and failed to offer a defense, without assertion of a proper reservation of rights, for the claims brought by the Trustee in the Rothmans Adversary Action.

The majority of the facts are undisputed. The questions are mainly whether genuine issues of material fact exist as to whether Defendant Essex Insurance Company had a duty to defend the Rothmans based on the insurance policy issued to CMM; whether by denying coverage, Essex breached contractual obligations it owed to the Rothmans, and lastly, whether based on its policy, after denying coverage without reserving its rights, Essex now has the duty to indemnify under the Rothmans' settlement agreement with the Trustee.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

In addition, the interpretation of an insurance contract presents a question of law. Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996). In the instant case, the parties do not dispute the terms of the insurance contract, but disagree as to the proper interpretation of the contract. Thus, because Defendant's duty to defend rests on the construction and interpretation of the contract, resolution by summary judgment is appropriate.

# 1. DECLARATORY RELIEF

The Trustee is seeking declaratory relief that (1) Essex's insurance policy provides coverage for the claims and losses incurred as a result of the Rothmans' mismanagement of CMM's trust account (claim no. 3); (2) that Essex was obligated to provide a defense to the Rothmans for the claims presented in the Trustee's FAC; and (3) that Essex is liable for the Trustee's attorney's fees incurred in obtaining coverage for the claim.

To prevail in an action seeking declaratory relief on the question of the duty to defend, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. The duty to defend exists if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. Delgado v. Interinsurance Exch. of Auto. Club of S. Cal., 47 Cal. 4th 302, 303, 97 Cal. Rptr. 3d 298, 300, 211 P.3d 1083, 1085 (2009).

There are certain presumptions that California law applies in cases involving insurance contracts—and, more specifically, those involving the duty to defend. "[W]hen the policy is ambiguous and the insured would reasonably expect coverage based on the

nature and kind of risk covered by the policy," or when "the underlying suit potentially seeks damages within the coverage of the policy," the California courts have held that an insurer has a duty to defend its insured against third-party lawsuits. <u>Conestoga Servs. Corp. v. Executive Risk Indem., Inc.</u>, 312 F.3d 976, 981-82 (9th Cir. 2002) citing <u>Stanford Ranch</u>, 89 F.3d at 624 (quoting <u>La Jolla Beach & Tennis Club</u>, 9 Cal.4th at 38, 36 Cal.Rptr.2d 100, 884 P.2d 1048) (Citations and internal quotations omitted).

Here, Essex was given notice of the complaint, the mediation, and the possibility of the existence of a potential for coverage. Thus, Essex was aware of, and the third party lawsuit plead facts giving rise to the potential for coverage under the insuring agreement.

## A. Duty To Defend

Essex argues that it had no duty to defend the Rothmans' operation of CMM for a number of reasons:

1) Maintaining a trust account is not a "professional service;"
2) Stealing from a trust account is not a "professional service" rendered "for others";
3) Claims that arise from CMM's inability to make payments from the depleted trust account are excluded by the policy's exclusion for "failure or refusal to collect, pay, or return any policy premium, return premium, commission..;"
4) Stealing from a trust account is excluded by the policy's exclusion for claims that arise out of dishonesty;
5) The Trustee's claim is for uninsurable restitution;
6) The Trustee's claim is uninsurable under Cal. Ins. Code § 533; and
7) The Trustee's claim is barred by the Policy's "insured vs. insured" exclusion.

The Trustee contends that Essex owed a duty because the FAC alleged that the Rothmans committed errors and omissions in the course of their Professional Services as to their management and control of the CMM Insurance Trust Account, (the "Trust Account"), which CMM was required to maintain in accordance with California Insurance Code §1733 et seq. <u>See</u> RJN 2, Ex. 1 Third Claim for Relief, ¶¶ 75-83; <u>see also</u> RJN 8. Specifically, the Trustee alleged that the failure of the Rothmans, as the officers and directors of CMM, to supervise the business affairs and management of CMM through its Trust Account was a Wrongful Act done in the performance of their Professional Services that consisted of the control, maintenance and operation of the Trust Account for the benefit of its clients and the insurance companies it represented. After the Rothmans tendered the Trustee's claims to Essex for defense and for coverage, Essex denied coverage, without a reservation of rights.

I.    WRITTEN TERMS OF THE POLICY

A starting point must be the pertinent policy provisions of the Essex issued Policy to CMM, Inc. for the June 1, 2011 through June 1, 2012 Policy Period.

Case 1:14-ap-01042-MT   Doc 57   Filed 03/20/15   Entered 03/20/15 09:42:31   Desc
Main Document   Page 4 of 18

With respect to "Professional Services," the Policy's Insuring Agreement provides that Essex:

> shall pay on behalf of the Insured all sums in excess of the Deductible … which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured and reported to the Company during the Policy Period, Automatic Extended Reporting Period, or Optional Extended Reporting Period, if exercised, **by reason of a Wrongful Act** or Personal Injury in the performance of **Professional Services** rendered or that should have been rendered by the Insured or by any other person or organization for whose Wrongful Act or Personal Injury the Insured is legally responsible…

[Essex's Separate Statement of Undisputed Facts ("SSUF") 51 (Policy Insuring Agreement A.)] (Emphasis Added)

"Wrongful Act" is defined to mean "any act, error or omission in Professional Services." [SSUF 51 (Policy Definitions N.)]

Policy Definitions K then describes "Professional Services" in pertinent part to mean "the following services rendered for others:

> 1. Insurance Wholesaler;
> 2. Insurance Managing General Agent;
> 3. Insurance General Agent;
> 4. Insurance Underwriting Manager;
> 5. Insurance Program Administrator;
> 6. Insurance Agent;
> 7. Insurance Broker;
> 8. Insurance Surplus Lines Broker;
> 9. Insurance Consultant;…."

[SSUF 51 (Policy Definitions K.)

### a.  Administration of an Insurance Trust Account is a Professional Service

#### i.  "Professional Service"

The threshold issue is whether the administration of the CMM Trust Account is a Professional Service for others. The Ninth Circuit has defined "professional service" in a different context as follows:

> The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities…. In determining whether a

4

particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

Bank of California, N.A. v. Opie, 663 F.2d 977, 981 (9th Cir.1981) (quoting Marx v. Hartford Accident and Indem. Co., 183 Neb. 12, 157 N.W.2d 870, 871-72 (1968)).

In Opie, a bank provided lines of credit for Opie to draw upon to finance construction projects. Pursuant to the loan agreement, Opie was required to use the loan proceeds to discharge construction liens and other encumbrances on properties. In violation of the agreement, Opie used the funds for another purpose and failed to discharge the construction liens. This resulted in the bank's security being impaired. Eventually, the bank obtained a judgment against Opie and filed a writ of garnishment against Opie's professional liability insurer. The insurer claimed that the actions of Opie were not "professional services." The Ninth Circuit held that Opie's activities were professional services. In doing so, the court recognized that managing the loan proceeds was part of Opie's day-to-day operations and a necessary part of its business. See Id. at 982. Further, the court reasoned that "[t]o conclude otherwise would ignore the nature of the [business], the plain meaning of the policy, and the reasonable expectations of the insured." Id.

In Utica Mut. Ins. Co. v. Miller, the Court of Appeals in Maryland determined that [a]ccounting for premiums is generally a duty that an insurance agent owes to an insurance company, and is part of the agent's business. The insurance company may choose the agent, in part, because of his ability to maintain accurate records of the premiums for policies sold on behalf of the company. 130 Md. App. 373, 389, 746 A.2d 935, 944 (2000). The Court held that an agent's acts of monitoring his business operations, maintaining records, and accounting to the insurance company for premiums were "professional services." It came to this conclusion based on its interpretation of Ninth Circuit law. Thus, although the decision in Utica is not binding on this Court, it is persuasive as it applied Ninth Circuit law to an insurance agent's handling of policy premiums.

Essex argues that the administration of an insurance trust account is similar to that of an attorney's or a medical service provider's trust account. It relies on cases discussing such accounts in arguing that these California cases should control rather than Opie and Utica. One case relied on by Essex, Horizon W. Inc. v. St. Paul Fire And Marine Ins. Co., involved health care providers who sued their professional liability insurer for failing to defend them in a suit alleging that they violated the False Claims Act (FCA) by submitting Medicare and Medicaid claims for services that were not provided. 214 F. Supp. 2d 1074 (E.D. Cal.) aff'd sub nom. Horizon W., Inc. v. St. Paul Fire & Marine Ins. Co., 45 F. App'x 752 (9th Cir. 2002). The Court held that under California law, health care providers' submission of Medicare and Medicaid claims did not constitute a "professional service," absent a showing that individuals submitting claims needed specialized knowledge. Thus, the insurer had no duty to defend the health care providers based on claims for services that were not provided but only charged for.

In Inglewood Radiology Med. Grp., Inc. v. Hosp. Shared Servs., Inc., the other case relied on, the court held that the decision to terminate employment was a business or administrative decision, and the applicable policy only required the insurer to indemnify the corporation for sums the corporation became obligated to pay because of injuries arising out of the rendering of professional services, i.e., medical services. 217 Cal. App. 3d 1366, 266 Cal. Rptr. 501 (Ct. App. 1989).

Horizon addressed a situation where the Court concluded that no specialized knowledge was involved. Here, the undisputed evidence is that a broker needs specialized knowledge to administer an insurance trust account. Inglewood Radiology addressed the booking services of a medical practice. The professional services were not directly related to the activities of their profession – providing medical care.

Looking specifically at the act of maintaining an Insurance Trust Account, based on California law, the maintenance of Trust Account is not simply an administrative act. Maintaining a trust account is a statutorily required professional service for an insurance agent and broker. California Insurance Code §1733 et seq. reads in pertinent part: "[a]ll funds received by any person acting as a licensee … as premium or return premium on or under any policy of insurance or undertaking of bail, are received and held by that person in his or her fiduciary capacity. Thus, California Insurance Code §1733 imposes a fiduciary obligation creating a special risk inherent in the practice of the profession. See Opie, at 981.

Insurance brokers are entrusted with funds to be paid out. California Insurance Code 1734(b) requires the insurance broker to:

> (a) Remit premiums, less commissions, and return premiums receive or held by him to the insurer or the person entitled thereto, or
> (b) Maintain such fiduciary funds on California business at all times in a trustee bank account or depository in California separate from any other account or depository, in an amount at least equal to the premiums and return premiums, net of commissions, received by him and unpaid to the persons entitled thereto or, at their direction or pursuant to written contract, for the account of such persons.
> (c) Maintain such fiduciary funds pursuant to Section 1734.5.

Based on the requirements listed above, the maintenance of an insurance trust account requires more than just depositing and remitting funds. The Trustee has submitted the Declaration of Sanford Michelson, [1] an expert in the administration of an Insurance Trust Account under California law, in which he explains the complexity of managing an Insurance Trust Account pursuant to California law. See RJN 11. No opposing expert or other facts were submitted to dispute the Michaelson opinion. See Plaintiff's Reply to Defendant's Response to Plaintiff's Statement of Facts, Dkt. no. 50. The accounting of this trust account is not administrative or ancillary to the practice of insurance agents or brokers but requires specialized knowledge of the duties and obligations of insurance brokers in the ordinary course of their business.

### ii. **"For Others"**

Essex also argues that even if the maintenance of a trust account were considered a professional service, that service was not performed "for others." Essex claims that because the Trustee alleged the Rothmans were withdrawing funds to pay themselves, they were not providing a professional service "to others." Essex relies on Transamerica Ins. Co. v. Sayble, where a California appellate court considered a lawyer's malpractice policy that applied to the

---

[1] The Declaration was submitted previously in support of Debtor's Opposition to Motion for Appointment of Chapter 11 Trustee in the Debtor's Bankruptcy. Dkt no. 47 entered on 1/19/12.

provision of professional services "for others." 193 Cal. App. 3d 1562, 1565 (1987) ("Sayble"). The Sayble court rejected the argument that the policy could extend coverage to a dispute between partners at the law firm because the dispute involved a lawyer acting in his capacity as a partner at the firm, which did not involve providing services "for others." Id. Essex maintains that because, here, the Trustee is not a customer of CMM, at best he can allege that the Rothmans "mismanaged" the account by failing to prevent themselves from stealing from it. Essex argues that the mismanagement of a trust account is an internal dispute because failing to prevent your own theft is not a "professional service."

The Court of Appeal in Sayble held that insurers were not required under its professional liability policy issued to an attorney to defend lawsuits based on business conflicts between members of the law firm in the absence of an allegation of professional malpractice. In contrast, the Trustee argues that his complaint alleged professional malpractice against the Rothmans for the mismanagement of the trust account. Further, the Trustee was not suing on behalf of CMM against the Rothmans, but he was suing on behalf of the debtor's bankruptcy estate. See Section II c. Policy Exclusion E- Insured v. Insured discussion below.

Here, the Insurance Trust Account is used to collect and pay premiums -- services that directly relate to the insurance broker's profession, in that premiums that are paid and collected are used to purchase or maintain the insurance policies, which are the core of the broker's business -- the selling and maintenance of insurance policies. The broker's trust account requires a working knowledge of the insurance business, knowledge of how commissions work and are to be deducted from the payments received, and how refunds of policy premiums are to be allocated and paid, among many other payments and collections that are made from the Trust Account as required by state law. Conversely, an attorney's trust account is simply a conduit for the receipt of monies, which can be administered without the knowledge of the attorney's professional activities. One of the primary duties of an insurance broker is the administration of a trust account. The maintenance is also a required service performed for the benefit of others, such as for clients and other brokers, not just for CMM.

Finally, Essex's argument that theft is not a professional service does not address whether the administration of a trust account is a professional service based on the policy's language. Essex conflates the Trustee's allegations with the definition of professional services in its policy. Essex denied coverage because it determined that the administration of the trust account is just accounting and not a professional service. As discussed above, however, based on the language of the policy, the administration of a trust account is an identified professional service for others and conforms to the nature of the business, the plain meaning of the policy, and the reasonable expectations of the insured.

### b. The Duty to Defend was Triggered

Because the maintenance of an insurance trust account is a professional service as defined in the policy, the next issue is whether the duty to defend was triggered by the Trustee's allegations in the complaint. In pertinent part, the Trustee alleged, "as of January 25, 2012, the Debtor's books and records disclose that the Debtor had a 'net payable' to various insurance companies in the amount of $1,085,659.14. As of January 25, 2012, the Debtor's General Ledger sets forth that the Trust Account had an account balance of $11,783.20. Based thereon, due to the acts and conduct and mismanagement of Defendants Herbert Rothman, Eric Rothman and

Rebecca Rothman, the Debtor was out of trust in an amount believed to be in excess of $ 1 million…[caused by the ] breach of their fiduciary obligations owed to the Debtor in failing to maintain the Trust Account as required by California Law…" <u>See</u> RJN 2, Ex. 1 Third Claim for Relief, ¶¶ 47-48. Although, the Complaint alleged intentional looting, it also could fairly be read to encompass mismanagement or other issues with handling the trust account.

A liability insurer has a duty to defend its insured if facts alleged in the complaint, or other facts known to the insurer, potentially could give rise to coverage under the policy. <u>Scottsdale Ins. Co. v. MV Transportation</u>, 36 Cal.4th 643, 654–655, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005); <u>Gray v. Zurich Insurance Co</u>. 65 Cal.2d 263, 275–277, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). The facts need only "raise the possibility" that the insured will be held liable for covered damages. <u>Montrose Chem. Corp. v. Superior Court</u>, 6 Cal. 4th 287, 304, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). An insurer has a duty to defend even if the claims against the insured are " 'groundless, false, or fraudulent.' " <u>Horace Mann Ins. Co. v. Barbara B</u>. 4 Cal.4th 1076, 1086, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." <u>Montrose</u>, supra, at pp. 299–300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Essex argues that it is not a professional service to withdraw and use funds for the Rothmans own benefit. Indeed, stealing is not a professional service, but an insurer must look at all the allegations in the complaint. The Trustee's complaint alleged mismanagement as well as stealing. In <u>Gray v Zurich Insurance Co.</u> 65 Cal.2d 263, the insurer refused to defend on the grounds that the complaint against the insured sought damages for an intentional tort, and the policy contained an exclusion for damages caused intentionally by the insured. The court, recognizing that one must look not only to the pleaded word, but to the "potential liability" created by the suit, held in favor of the insured. Although the complaint alleged an intentional tort, it could have been amended, in light of the facts alleged, to seek damages for negligence. Necessarily, therefore, the action presented the potential of a judgment based on unintentional conduct. <u>See also</u> § 4:2.Resolution of doubts and ambiguities, 1 Insurance Claims and Disputes § 4:2 (6th ed.). <u>Gray</u> made clear that facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint may not reflect a potential for liability under the policy. (<u>Gray</u>, <u>supra</u>, 65 Cal.2d at p. 276.). <u>Montrose Chem. Corp. v. Superior Court</u>, 6 Cal. 4th 287, 296, 24 Cal. Rptr. 2d 467, 472, 861 P.2d 1153, 1158 (1993).

Essex erroneously relied on the Trustee's allegations of intentional looting and fraud and ignored other allegations and possible explanations for the trust account problems. California law is clear that an insurer needs to compare the allegations in the complaint with the terms of the policy. Based on the language of the policy, Essex should have defended the Rothmans for the alleged mismanagement of the Trust Account that was potentially covered. Essex denied coverage based on the Trustee's allegations of intentional wrongdoing in the FAC instead of first defending and then denying indemnity based on the policy if intentional wrongdoing were proven. None of these allegations were ever adjudicated or proven and were vehemently denied by the Rothmans. The Rothmans' alleged looting of the trust account merely placed in dispute whether the insured's actions would eventually be determined not to constitute an occurrence or fall within one or more of the exclusions contained in the policies. It did not, however, establish that the underlying claim could not come within the policy coverage. The duty to defend arises when the underlying claim <u>may</u> fall within policy coverage and arises out of the existence of a potential for coverage.  Although the Trustee alleged intentional mismanagement in his

8

complaint, it did not foreclose the possibility that the alleged mismanagement of the Trust Account could be found to be "of the nature and kind covered by the policy" and would qualify as an error in professional services that the Policy specifically covers. Gray, supra, 65 Cal.2d at p. 274. Because there are claims arising out of the insured's activities in rendering 'professional services for others' in their 'capacity as insurance brokers,' the Trustee's allegation of mismanagement of the trust account falls within Essex's scope of coverage and a duty to defend was triggered.

## II.    EXCLUSIONS

In a declaratory relief action to determine the insurer's obligations under the policy, the burden is on the insured initially to prove an event is a claim within the scope of the basic coverage. The burden then shifts to the insurer to prove the claim falls within an exclusion. Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 44, 261 Cal. Rptr. 273, 275 (1989). Thus, the burden is on Essex to prove the claim falls within an exclusion. Essex claims that it denied coverage based on non-professional services and alleged fraudulent acts by the Rothmans. Essex argues that based on its policy exclusions, there was no duty to defend the Rothmans because the policy excludes coverage for claims arising out of dishonest or fraudulent conduct and the failure to collect, pay or return any policy premiums or commissions.

[A]n exclusion from coverage otherwise within the scope of an insuring clause must be clear and unmistakable to be given effect. GGIS Ins. Services, Inc. v. Superior Court, 168 Cal. App. 4th 1493, 1507, 86 Cal. Rptr. 3d 515, 527 (2008) ("GGIS Ins.") citing MacKinnon v. Truck Ins. Exchange 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003); AIU Ins. Co. v. Superior Court 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). "The exclusionary clause 'must be conspicuous, plain and clear.' " Id. The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence. Id. citing Parsons v. Bristol Development Co. 62 Cal.2d 861, 865, 44 Cal. Rptr. 767, 402 P.2d 839 (1965).

### a.    Policy Exclusion A

The Policy does not apply to any Claim:
> based upon or arising out of any actual dishonest, fraudulent, criminal or malicious act, error or omission by an Insured; provided, however, this exclusion shall not apply to any Insured who:
>
> > 1. did not personally commit, participate in, or acquiesce in the act, error or omission;
> > 2. did not remain silent or passive after having personal knowledge of the act, error, or omission; and
> > 3. notified the Company immediately upon becoming aware of the act, error, or omission;

[SSUF 51 (Policy Exclusions A.)

This exclusion does not apply in this case because as discussed above, in addition to the Trustee's allegations of actual dishonest and fraudulent acts, the possibility of negligent mismanagement of the trust account still remained. In addition, Essex denied coverage before

conducting an investigation as to whether the Rothmans collectively or individually committed the alleged acts. In the Trustee's adversary proceeding, the Rothmans denied any wrongdoing, so it is possible that one or more of the Rothmans was not involved in the alleged fraudulent acts and was not excluded by this provision. As stated earlier, Essex erroneously relied on the Trustee's allegations to deny coverage. The duty to defend is broad and includes any allegations that could potentially be covered by the policy. Essex's assumption of dishonesty based upon some of the allegations of the complaint cannot be a basis for denying coverage. Finally, because the Trustee already resolved the litigation, Essex cannot now challenge the factual underpinnings of the settlement simply by repeating allegations that dishonesty, rather than negligent mismanagement was involved. <u>See</u> Section 2(b)II. Settlement discussion below.

### b.  Policy Exclusion M

The Policy does not apply to any Claim:

> . . . based upon or arising out of allegations of intentional failure or refusal to collect, pay, or return any policy premium, return premium, commission, tax, or policy fee of any kind. Notwithstanding this provision, this exclusion shall not apply to allegations of negligent bookkeeping errors or oversights.

[SSUF 51 (Policy Exclusions M.)]

Essex argues it had no duty to defend based on the failure to pay exclusion because there were no allegations in the complaint that the withdrawals from the trust account were not made properly but by mistake due to a book keeping error. As discussed above, this is not the standard that gives rise to the duty to defend. A liability insurer has a duty to defend its insured if facts alleged in the complaint, or other facts known to the insurer, potentially could give rise to coverage under the policy. The facts need only raise the possibility that the insured will be held liable for covered damages. <u>GGIS Ins.</u>, 168 Cal. App. 4th 1493, 1494, 86 Cal. Rptr. 3d 515, 519 (2008). Exclusion M does not apply because the Trustee's allegations could include negligent bookkeeping. The Trustee generally, alleged that the Rothmans failed to 1. monitor CMM's business operations; 2. maintain records; 3. account for premiums; and 4. properly audit the Trust Account activities. The Trustee argues that those failures could be based on negligence, not intentional misconduct as Essex claims.

Although, Policy M's exclusion specifically excepts negligent bookkeeping errors or oversights, which the Trustee alleged in its FAC, Essex argues that the carve-out provision in the exclusion is for the improper payments to another person made intentionally but made to an improper party. Essex contends there were no allegations of erroneous payments that created the out of trust situation. Essex maintains this case is similar to <u>GGIS Ins.</u> <u>supra</u>. Essex is correct that the policy language in both cases is similar. <u>GGIS Ins.</u>, however, is a failure to pay commission case and not applicable here. In <u>GGIS Ins.</u>, the Pennsylvania Insurance Commissioner clearly alleged a failure to pay cause of action in its complaint. Here, there were no allegations of a failure to pay premiums that were owed to a third party. The Trustee alleged that funds were missing because the trust account balance did not reflect sufficient funds to cover Debtor's liabilities. A failure to pay claim is different from a negligent mismanagement claim. An out of trust situation based on mismanagement of a trust account tends to occur prior to the failure to pay. An out of trust account could occur based on just bad record keeping or intentional acts. The Trustee argues his claim against the Rothmans can fairly be characterized that the overall

management of the Debtor was negligent because the Rothmans failed to properly monitor the trust account. In this case, it is possible that the out of trust situation was due to unintentional or negligent mismanagement of the trust account and does not necessarily mean that there was a failure to pay. In addition, the exception has to do with third party claims and there were no third party claims for Debtor's failure to pay premiums.

### c.  Policy Exclusion E

Essex also argues that the policy excludes coverage for claims filed by another insured and the Trustee is considered an insured under paragraph 7 of the definition in the Policy. Essex argues the Trustee is the legal representative in bankruptcy of the insured, CMM.

Exclusion E – the "Insured vs. Insured Exclusion" – states that "The policy does not apply to any Claim:… by or on behalf of another Insured." [SSUF 51 (Policy Exclusions E.)] "Insured" is defined, in pertinent part, to include the following:

> 1. the Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;…
> 3. any past or current principal, partner, officer, director, trustee, shareholder or employee of the Named Insured or its Predecessor Organization solely while acting on behalf of the Named Insured or its Predecessor Organization and within the scope of their duties as such;…
> 7. the heirs, executors, administrators, assigns and **legal representatives of each Insured above in the event of** death, incapacity, or **bankruptcy** of such Insured but only for such Insured's liability as otherwise covered herein.

[SSUF 51 (Policy Definitions F.)] (Emphasis added).

Although the Trustee is the representative of Debtor CMM's bankruptcy estate, he is not the Trustee or the representative of the Rothmans and is suing Essex through the Rothmans' assignment of rights, not the Debtor's.  The Trustee was and is prosecuting his claims on behalf of the estate and for the benefit of those having valid claims against it, among whom the Debtor stands last in priority. In Rigby v. Underwriters at Lloyd's, London, 907 So. 2d 1187, 1188-89 (Fla. Dist. Ct. App. 2005), the Court held the insured versus insured exclusion did not apply because the trustee had filed suit on behalf of the debtor's creditors, based upon his statutory duty as trustee under the Code and did not bring the adversary action acting as an officer or director. [2] Similarly, here the Trustee is not bringing its action against the Rothmans acting as an officer or director.

The Trustee is a legal entity separate and distinct from the Debtor, prosecuting claims that are not the Debtor's, therefore, the "insured vs. insured exclusion" in the Policy does not apply. See In re Cnty. Seat Stores, Inc., 280 B.R. 319 (Bankr. S.D.N.Y. 2002) (Trustee, who was

---

[2] The clause provides: "[Lloyd's] shall not be liable to make any payment in connection with any Claim:. . . . F. by, on behalf of, or at the direction of any of the Assureds, except and to the extent such Claim is brought derivatively by a security holder of the Company who, when such Claim is first made, is acting independently of all of the Assureds." Under the definition provisions of the policy "Assureds means the Company and the Directors and Officers." "The Directors and Officers" as originally defined are: "Directors and Officers means all persons who were, now are, or shall be directors or officers of the Company including their estates, heirs, **legal representatives or assigns in the event of their death or bankruptcy**."

charged with statutory duty to act in best interest of general creditors in collecting and preserving estate assets and, in particular, in pursuing breach of fiduciary duty claims against corporate debtor's former officers and directors, was independent and disinterested entity, separate and distinct from corporate Chapter 11 debtor or prepetition corporation, and did not assume debtor's identity for purpose of the policy's "insured vs. insured" exclusion) and see also In re Buckeye Countrymark, Inc., 251 B.R. 835, 840 (Bankr.S.D.Ohio 2000) (bankruptcy trustee is not the debtor's alter ego but a separate legal entity that neither represents the Debtor nor owes the Debtor a fiduciary obligation and whose responsibility is to the bankruptcy estate). The Trustee's duty is to protect the interests of the creditors and to administer property of the estate. He or she cannot be the legal representative of the debtor because the trustee does not stand in the shoes of the debtor. See TIG Specialty Insurance Company v. Koken, 855 A.2d 900, 909 (Pa.Commw.Ct.2004) (finding that the plain language of the definitions and the exclusion do not include the bankruptcy trustee for claims brought by the Trustee). As discussed herein, the bankruptcy trustee did not assert the claims "by, on the behalf of, or in the right of the Insured Entity" but has instituted the claims on behalf of the estate and for the benefit of its creditors. The Trustee is not a trustee of CMM, the corporate entity, but the trustee of the bankruptcy estate of CMM. See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106, 1117 (9th Cir. 2006) citing In re Swift Aire Lines, Inc., 30 B.R. 490, 495 (9th Cir. B.A.P. 1983) ("The bankruptcy estate of Swift is, represented by the trustee, a new legal entity distinct from the debtor Swift Aire Lines, Inc." (citing 11 U.S.C. §§ 323, 363, 541, 704, and 721)).

In addition, exclusions are to be read narrowly. In this case, the exclusion does not expressly and plainly provide that bankruptcy trustee's are excluded under the Policy. It must also be noted that in contrast to the Policy in this case, there are liability policies that explicitly exclude coverage when suits are brought by bankruptcy trustees or debtors in possession. If the policy wanted to exclude a bankruptcy trustee's claims, then the policy should have explicitly stated that bankruptcy trustees are excluded. See In re Buckeye, supra. (the intent behind an "insured vs. insured" exclusion is to protect insurance companies against collusive suits. When the plaintiff is a bankruptcy trustee acting as a genuinely adverse party to the defendant officers and directors, there is no threat of collusion. Under such circumstances, an "insured vs. insured" exclusion does not excuse the insurance companies from coverage). Because the insurer writes the policy, it is held "responsible" for ambiguous policy language, which is therefore construed in favor of coverage. AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822, 799 P.2d 1253, 1264-65 (1990). Having failed to meet its burden "to phrase exceptions and exclusions in clear and unmistakable language," Essex cannot now benefit from the ambiguity. State Farm Mut. Auto. Ins. Co. v. Jacober, 10 Cal.3d 193, 201–02, 110 Cal.Rptr. 1, 514 P.2d 953 (1973).

Thus, the Trustee is not the legal representative of the insured and is not barred by the "insured v. insured" exclusion.

### d.  California Section 533 Exclusion

Section 533 of the Insurance Code provides: "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533 does not bar coverage for conduct which may be wrongful, but which is not intentional or willful from the standpoint of the insured. Preclusion under § 533 requires more than negligence, recklessness or even the intentional doing of an act constituting ordinary negligence or the violation of a statute. The statutory exclusion is

12

intended to preclude indemnification for conduct that is clearly wrongful and necessarily harmful. Unified W. Grocers, Inc. v. Twin City Fire Ins. Co., 457 F.3d 1106, 1109 (9th Cir. 2006).

There is no dispute that for much of this case, the Trustee alleged intentional looting and other tortious acts by the Rothmans. The Trustee alleged a variety of claims against the Rothmans, however, some of which asserted negligence and others of which required willfulness. The alleged breach of a fiduciary duty in the complaint may be satisfied by proof of negligent conduct without any evidence of or logical correlation to a willful scheme to defraud. No finding was ever made that the Trustee's allegations of willful looting were true. This exclusion is not applicable at this point because the Trustee has already settled his claims against the Rothmans and there have been no findings that the Rothmans caused a loss by any willful acts. The failure to participate in the action against the Rothmans precludes revisiting that question.

In this case, the Policy language is clear.  Nevertheless, if there is still any question regarding coverage, it is resolved in favor of the insured. Cooper Co. v. Transcontinental Ins. Co., 31 Cal.App.4th 1094, 1101(1995). As discussed above, the maintenance of an insurance trust account is a professional service and the Trustee has shown that one of the claims in the FAC potentially falls within policy coverage. Based on the language of the policy, none of the exceptions in the Policy apply to the Rothmans and therefore, Essex had a duty to defend the Rothmans against the Trustee.

In conclusion, there are no genuine issues of material fact as to whether Essex had a duty to defend the Rothmans under the Policy. It did.

## 2. BREACH OF CONTRACT

The Trustee argues that Essex breached its obligations under the terms and conditions of the Policy by (1) failing to provide a defense to the Rothman Parties, and (2) failing to provide coverage and pay the claims of the Trustee as presented in the FAC, notwithstanding its obligation to do so.

The insurer must prove that the claim cannot fall within policy coverage. Montrose Chemical Corp., 6 Cal. 4th at 300. Where an insurer does not investigate the claim, the insurer will not be able to establish that the claim cannot fall within policy coverage, thus results in a breach of the duty to defend. See Bogard v. Employers Casualty Co., 164 Cal. App. 3d 602, 615, 210 Cal. Rptr. 578 (1985). Wrongful failure to provide coverage or defend a claim is a breach of contract. Isaacson v. Cal. Ins. Guarantee Assn., 44 Cal. 3d 775, 791, 244 Cal. Rptr. 655, 666, 750 P.2d 297, 308 (1988).

As the Rothmans dispute includes matters which are covered by the policy, Essex's reliance on cases such as Ceresino v. Fire Ins. Exch., 215 Cal. App. 3d 814, 822 (Ct. App. 1989) is misplaced. Essex did not defend where at least some allegations and ultimate liability came under the scope of the policy. Thus, once Essex failed to defend the Rothmans, it breached the terms of the Policy. Accordingly, the Motion is granted for Essex's breach of contract for erroneously denying a defense for the Rothmans.

As Essex had a duty to defend the Rothmans against the Trustee's claims based on the terms of the Policy, the question then is whether, after a settlement has been entered, can an insurer who breached its duty to defend be precluded from contesting its duty to indemnify? If Essex has a duty to indemnify, what portion of the settlement is covered by the Policy? The question of damages is more complex.

## B. Damages

### I.    ATTORNEY FEES

When an insurer breaches its duty to defend, the insured may recover as contract damages the funds it expended defending itself, and also any damages that proximately resulted from the insurer's breach of the insurance contract. Amato v. Mercury Cas. Co., 53 Cal.App.4th 825, 61 Cal.Rptr.2d 909, 912-13 (1997). Under California law, where an insurer wrongfully refuses to defend an action against its insured, the insurer is liable for the total amount of the fees unless the insurer produces undeniable evidence that it is not liable for all of the attorney's fees. Hogan v. Midland Nat'l Ins. Co., 3 Cal.3d 553, 91 Cal.Rptr. 153, 476 P.2d 825, 831 (1970). An insured suing on the policy for alleged failure of the insurer to defend an action against the insured as agreed is not entitled to recover an attorney fee for prosecution of this action against Essex. Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245, 248, 286 P.2d 1000, 1002 (1955).

Here, Essex has not produced any evidence that it is not liable for the attorney fees or the damages that resulted from its refusal to defend the Rothmans against the Trustee's claims. Essex argues that Scottsdale insurance covered the attorney fees incurred defending the Rothmans, so Scottsdale insurance should be entitled to recover any attorney fees, not the Trustee because he cannot double dip. No undisputed evidence was presented on this issue. Thus, there is an issue of material fact as to whether the Trustee is entitled to attorney fees based on the assignment of the Policy or whether those fees were already covered and owed to Scottsdale Insurance. This issue requires further factual and legal development.

### II.    THE SETTLEMENT

The Trustee argues that Essex is barred from disputing the amount of the settlement because it was approved by the Court, was not collusive, and was not objected to by Essex. Essex argues that it is not precluded from contesting the reasonableness of the settlement amount.

Where an insured was sued for liability covered under the policy but the insurer refused to defend, the insured has the right to make any reasonable and bona fide compromise of the action against them and is generally entitled to recover from the insurer, in addition to the amount paid for the reasonable compromise, any reasonable attorney's fees incurred in defense of the action. Ritchie v. Anchor Cas. Co., 135 Cal. App. 2d 245, 286 P.2d 1000 (1955) see also Isaacson v. California Ins. Guarantee Assn., 44 Cal. 3d 775, 792, 750 P.2d 297, 308 (1988). If an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim and the amount of such

14

liability. <u>Isaacson v. Cal. Ins. Guarantee Assn.</u>, 44 Cal. 3d 775, 791, 244 Cal. Rptr. 655, 666, 750 P.2d 297, 308 (1988); <u>see also</u> <u>Everett Associates, Inc. v. Transcon. Ins. Co.</u>, 159 F. Supp. 2d 1196, 1209 (N.D. Cal. 2001) aff'd, 35 F. App'x 450 (9th Cir. 2002) (It is a general rule that when an insurer "improperly refused to defend an insured, the insured is entitled to make a reasonable settlement of the claim in good faith, and then maintain an action against the insurer to recover the amount of the settlement.").

Here, the settlement between the Rothmans and the Trustee is presumptive evidence of the Rothmans liability and the amount of such liability. Essex took the risk and waived its right to explore the claims when it denied coverage. Essex was given the opportunity to object and participate in the negotiations but it declined to do so. Essex cannot now dispute the reasonableness of the settlement amount. There is no indication that the settlement was not entered into in good faith. In fact, the Court made a finding as part of its approval of the settlement that it was reasonable and in good faith. <u>See</u> RJN Ex. 6 - Order Granting Motion authorizing Trustee to enter into and consummate good faith settlement determination with Rothman parties, Dkt. no 228.

Whether the settlement was reasonable and whether Essex has a duty to indemnify the entire settlement amount are two different issues. An insurer must indemnify the insured against judgments based on claims <u>covered</u> by the insurance policy. <u>Buss v. Superior Court</u>, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, 773 (1997). In a mixed cause of action, where it is unclear whether a judgment was based on covered or uncovered claims, the insurer can be liable for the entire judgment. <u>Gray</u>, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168. Similarly, when an insurer breaches its duty to defend and the insured proves that at least one claim in a mixed cause of action is covered, the insured does not have to allocate between claims. The insurer, however, "*can* still present any defenses not inconsistent with the judgment against the insured." <u>Hogan v. Midland Nat'l Ins. Co.</u>, 91 Cal.Rptr. 153, 476 P.2d at 832 (emphasis added). [3] The burden rests on the insured initially to show that at least a portion of the settlement involved compensation for damages attributable to claims that were covered by the insurance policy. Once the insured has satisfied that burden, the burden of proof shifts to the insurer to show what portion of the settlement is attributable to covered claims. [4] <u>Peterson Tractor Co. v. Travelers Indem. Co.</u>, 156 F. App'x 21, 24 (9th Cir. 2005) (Unpublished). Following the insurer's refusal to defend, the insurer may litigate in a subsequent action against it by the insured whether the policy covered the liability underlying the settlement in the subsequent action, and damages paid pursuant to a settlement are recoverable if the insurance policy covered such damages. <u>Everett Associates, Inc. v. Transcon. Ins. Co.</u>, 159 F. Supp. 2d 1196 (N.D. Cal. 2001) <u>aff'd</u>, 35 F. App'x 450 (9th Cir. 2002). (<u>Gray</u> does not preclude the insurer from establishing that the damages were not covered under the policy in the first place).

The Trustee has met his burden showing that at least a portion of the settlement is covered by the Policy. Essex now bears the burden to prove the amount that is covered in the settlement. Essex asserts that it can only be held responsible for claims within the scope of

---

[3] The Ninth Circuit has held in an unpublished opinion that California would apply the logic of <u>Gray</u> and <u>Hogan</u> to insurance settlements, and not confine it to judgments. <u>Peterson Tractor Co. v. Travelers Indem. Co.</u>, 156 F. App'x 21, 23 (9th Cir. 2005).

[4] <u>Hogan</u> noted that it would "cast an impossible burden" on the insured to be required "to show the extent of the loss caused by the insurer's breach." <u>Hogan</u>, 91 Cal.Rptr. 153, 476 P.2d at 833. On the other hand, <u>Hogan</u> also noted that an insurer was entitled to assert a defense that some or all of the judgment might not be covered by the policy. <u>Id.</u> at 832.

coverage and the only claim of consequence under professional services is the out of trust allegation due to the misadministration of the trust account. The other claims do not fall under the Policy coverage. Essex also argues that even if the Trustee's arguments were correct, the damages cannot exceed the amount of the out of trust allegation.

The Trustee agues that Essex cannot challenge the allocation of the settlement amount based on the coverage afforded by the Policy. The Trustee relies on Diamond Heights Homeowners Assn. v. National American Ins. Co., where an excess insurer had refused a request to assume the defense of the insured, and had exercised the opportunity to participate in the section 877.6 hearing into the good faith and reasonableness of a proposed settlement. 227 Cal. App. 3d 563, 277 Cal.Rptr. 906 (1991). The excess insurer objected to the good faith claims made by its insured, but after the trial court had made its determination, it failed to seek relief by a petition for a writ of mandamus as provided in section 877.6, subdivision (e). The court held that this failure to seek appellate review of the good faith determination barred the insurer's subsequent bad faith and collusion claims. Id. at 583. Diamond Heights supports the Trustee's assertion that Essex cannot re-litigate the good faith and reasonableness of the settlement as it cannot reach back without violating due process, but it does not support the Trustee's theory that Essex must indemnify the entire amount of the settlement.

The Trustee also relies on Hamilton v. Md. Cas. Co., 27 Cal. 4th 718, 721, 117 Cal. Rptr. 2d 318, 320, 41 P.3d 128, 130 (2002). There a liability insurer agreed to defend its insured against a personal injury lawsuit. After the insurer refused a settlement demand within the policy limits, the claimant and the insured, without the insurer's participation, agreed on a settlement. The Court held a defending insurer cannot be bound by a settlement made without its participation and without any actual commitment on its insured's part to pay the judgment, even where the settlement has been found to be in good faith for purposes of Cal. Civ. Proc. Code § 877.6. Hamilton does not address the situation at hand because the insurer had agreed to defend the insured.

There is a duty to indemnify if the judgment or settlement was covered by the policy. Where the kind of claim asserted is not covered by the insurance contract (and not simply the amount of the claim), an insurer has no obligation to pay money in a settlement of a non-covered claim. DeWitt v. Monterey Ins. Co., 204 Cal. App. 4th 233, 234, 138 Cal. Rptr. 3d 705, 707 (2012) citing Risely v. Interinsurance Exchange of the Automobile Club 183 Cal.App.4th 196, 207–208, 107 Cal. Rptr. 3d 343 (2010).

Essex cannot dispute the good faith and reasonableness of the settlement, but this conclusion does not address what portion of the settlement is covered by the insurance policy. The Trustee enjoys a presumption that the entire settlement is included, but Essex may still be heard on how much of the settlement is covered by the policy since not all claims in the FAC are covered under the policy.

The Settlement covers eight causes of action. The settlement distinctly covered breach of fiduciary duty and mismanagement with the trust account but it also included potentially uncovered causes of action. For example, the settlement includes both the failure to properly manage CMM's premium "Trust Account" as well as having CMM pay for the purchase of a residence in Newport Beach, California. Although Essex cannot challenge the amount or reasonableness of the damages in the stipulation, Essex is possibly not liable for the full amount

16

of the settlement agreement. Thus, given the range of claims covered by the settlement, there are issues of fact regarding the amount of the settlement covered by the Policy. Further information is necessary to resolve the delineation of damages to be paid. Further briefing and perhaps a trial are needed to determine the full damages amount covered under the Policy.

### 3. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

This Court has already determined that Defendants breached their duty to defend, but whether Essex has breached the implied covenant of good faith and fair dealing is a separate cause of action. An insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim. Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 814, 169 Cal. Rptr. 691, 693, 620 P.2d 141, 143 (1979). The issue is whether Essex's failure to investigate was done in bad faith to breach the implied covenant of good faith and fair dealing.

The key to a bad faith claim is whether or not the insurer's denial of coverage was "reasonable." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 quoting Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir.2001). "[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." Chateau Chamberay Homeowners Ass'n v. Associated Intern., 90 Cal.App. 4th 335, 346 (2001); accord Dalrymple v. United Servs. Auto. Ass'n, 40 Cal.App. 4th 497, 511 (1995). "The genuine issue rule in the context of bad faith claims allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." Amadeo, 290 F.3d at 1161 citing Safeco Ins. Co. of Am. v. Guyton, 692 F.2d 551, 557 (9th Cir.1982). An insurer is not entitled to judgment as a matter of law, however, where viewing the facts in the light most favorable to [the non-moving party], a jury could conclude that the insurer acted unreasonably. Id. at 1162 (citing Neal v. Farmers Ins. Exch., 21 Cal.3d 910, 920 (1978)).

As to the Trustee's third claim, at this stage, the Court cannot grant the Motion because all material inferences are to be made in favor of the non-moving party. Whether the denial of coverage was reasonable is an issue of material fact and the Court needs to weigh the evidence and determine competing inferences.

Accordingly, the Motion for Summary Judgment is denied for the third cause of action.

### Evidentiary Objections

The Court has reviewed Defendant's evidentiary objections which concerned statements in Mr. Sharp's declaration. The Court did not rely on any of the objectionable evidence in reaching its ruling as outlined above. When determining whether a particular policy provides a potential for coverage, courts are guided by the principle that interpretation of an insurance policy is a question of law. Powerine Oil Co. v. Superior Court, 37 Cal. 4th 377, 118 P.3d 589 (2005). The bulk of the Plaintiff's statement of facts was undisputed. The issues disputed go mainly to the question of the scope of the indemnification and damages owed to the Trustee. Those objections are preserved for a later hearing consistent with this ruling.

**Request for Judicial Notice**

Plaintiff asks the Court to take Judicial Notice of Exhibits 1-16 in its Request for Judicial Notice filed concurrently with the Motion for Summary Judgment. See Dkt no. 15. Defendant also submitted an appendix of Exhibits A-F in support of its Opposition to the Motion. The Court takes judicial notice pursuant to Federal Rule of Evidence 201[5] of Plaintiff's Exhibits 1-16 and Defendant's Exhibits A-F because the exhibits are either court documents or generally accessible to the public and the accuracy of the documents have not been questioned.

**Conclusion**

Based on the above Findings of Facts and Conclusion of Law, the Motion for Summary Judgment is GRANTED in part and DENIED in part. The Motion is granted as to the Trustee's first claim of Declaratory Relief that Essex had a duty to defend the Rothmans and his second claim for Breach of Contract. The Motion is denied without prejudice as to the attorney fees, whether Essex has the duty to indemnify the full settlement amount and for the third claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. Further briefing or a trial on these issues will be discussed at the next status conference on May 13, 2015 at 11:00 a.m.

Plaintiff should submit a judgment and order in accordance with this ruling.

###

Date: March 20, 2015

Maureen A. Tighe
United States Bankruptcy Judge

---

[5] Federal Rule of Evidence 201 provides that "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."