Sean M. Hanifin (admitted *Pro Hac Vice*)
LOSS JUDGE & WARD LLP
Hamilton Square
600 14th Street NW
Suite 450
Washington, DC 20005
Telephone:    202.778.4070
Facsimile:    202.778.4099
Email:        shanifin@ljwllp.com

Daniel C. Streeter, Bar No. 229010
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:    949.622.2700
Facsimile:    949.622.2739
Email:        daniel.streeter@troutmansanders.com

Attorneys for Defendant
Essex Insurance Company

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>C.M. MEIERS COMPANY, INC.,<br><br>                    Debtor. | Case No. 1:12-bk-10229-MT<br>Chapter 11 |
| BRADLEY D. SHARP, CHAPTER 11 TRUSTEE, ESTATE OF C.M. MEIERS, COMPANY, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>ESSEX INSURANCE COMPANY,<br><br>                    Defendant. | Adversary No. 1:14-ap-01042-MT<br><br>**DEFENDANT ESSEX INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: September 13, 2016<br>Time:           10:00 a.m.<br>Courtroom:    302 |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

29044617

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    ESSEX HAS NO DUTY TO INDEMNIFY ...................................................................... 1

    A.    The Law Of The Case Doctrine Does Not Apply .................................................... 1

        1.    The  Duty To Defend Ruling Does Not Control The Duty To
Indemnify ...................................................................................................... 1

        2.    Fed. R. Civ. P. 54(b) Controls ...................................................................... 2

        3.    The Cases Relied Upon By The Trustee Do Not Support His
Argument ...................................................................................................... 2

    B.    The Fabricated Settlement Value ............................................................................ 3

    C.    No Law Supports The Trustee's "No Allocation" Argument ................................. 5

II.    THE TRUSTEE'S "BAD FAITH" CLAIMS ARE WITHOUT MERIT .......................... 6

    A.    The Trustee Fundamentally Misconstrues The Role Of Counsel ........................... 6

        1.    The Confusion ............................................................................................... 6

            i.    The Advice of Counsel Defense .................................................... 6

            ii.    The Other Way that Counsel's Involvement Defeats the
"Bad Faith" Claim ......................................................................... 7

    B.    The Trustee's Other "Bad Faith" Arguments Fail ................................................. 8

III.    CONCLUSION ................................................................................................................ 11

    A.    Coverage ................................................................................................................ 11

    B.    "Bad Faith" ............................................................................................................ 12

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

ESSEX'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amadeo v. Principal Mut. Life Ins. Co.*,
  290 F.3d 1152, 1161 (8th Cir. 2002) ....................................................................... 11

*American Internat. Bank v. Fidelity & Deposit Co.*,
  49 Cal. App. 4th 1558, 1571 (1996) ......................................................................... 10

*Baroco West, Inc. v. Scottsdale, Ins. Co.*,
  110 Cal. App. 4th 96, 103 (2003) ............................................................................ 10

*Beda ex rel. Kanteiko v. Hartford Cas. Ins. Co.*,
  2013 WL 755183 (S.D. Cal. Feb. 27, 2013) ...................................................... 10, 11

*Bock v. Travelers Property Ins. Co.*,
  465 Fed. App'x 623 (9th Cir 2012) .......................................................................... 10

*Buss v. Superior Court*,
  16 Cal. 4th 35 (1997) ............................................................................................ 1, 5

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
  90 Cal. App. 4th 335, 346 (2001) ......................................................................... 9, 11

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
  2004 WL 5234563, at *3 (C.D. Cal. Mar. 1, 2004) ................................................... 2

*DeWitt v. Monterey Ins. Co.*,
  204 Cal. 4th 233, 234, 138 (2012) ............................................................................ 5

*Everett Assocs., Inc. v. Transcon. Ins. Co.*,
  159 F.Supp.2d 1196 (N.D. Cal. 2001) *aff'd* 35 F.App'x 450 (9th Cir. 2002) ...................... 1, 5

*Fraley v. Allstate Ins. Co.*,
  81 Cal.App.4th 1282, 1292 (2000) ............................................................................ 9

*Guebara v. Allstate Ins. Co.*,
  237 F.3d 987, 993 (9th Cir. 2001) ............................................................................. 9

*Hamilton v. Maryland Cas. Co.*,
  27 Cal. 4th 718, 730 (2002) ...................................................................................... 3

*Hartford Fire Ins. Co. v. Herrald*,
  434 F.2d 638, 639 (9th Cir. 1970) ............................................................................. 2

*Horace Mann Ins. Co. v. Barbara B.*,
  4 Cal.4th 1076, 1081 (1993) .................................................................................... 10

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ............................................................................ 3

*Pacific Estates v. Superior Court*,
    13 Cal. App. 4th 1561 (1993) ........................................................................... 6

*Pruyn v. Agricultural Ins. Co.*,
    36 Cal. App. 4th 500, 527 (1995) .............................................................. 3, 4, 6

*Risely v. Interinsurance Exchange*,
    183 Cal. App. 4th 196, 207-208 (2010) ....................................................... 5, 6

*Safeco Ins. Co. of America v. Guyton*,
    692 F.2d 551 (1982) ......................................................................................... 9

*Singer Co. v. Sup. Ct.*,
    179 Cal. App. 3d 875 (1986) ........................................................................... 6

*United States v. Maybusher*,
    735 F.2d 366 (9th Cir. 1984) ........................................................................... 3

## OTHER AUTHORITIES

Fed. R. Civ. P. 54(b) ............................................................................................... 2

Croskey *et al.*, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) 12:1252
    – 1257 ............................................................................................................... 6

Emery J. Mishky, Robert Tessier, and Patrick G. Vastano California Code of Civil
    Procedure Sections 877, 877.5 and 877.6. ..................................................... 3

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    The Trustee continues to assert that the Court's duty to defend finding – without more –

2  ends this case.  As he had done in his opening brief, the Trustee quotes extensively (albeit

3  selectively) from the duty to defend ruling, all the while ignoring that duty to defend law differs

4  from the law that governs the duty to indemnify.  Finding a duty to defend requires no more than

5  finding a **possibility** of coverage; finding a duty to indemnify requires a finding – based upon

6  fact, not speculation – of **actual** coverage.  Because he cannot meet his burden of showing actual

7  coverage, the Trustee makes no effort to do so.  Instead, he urges the Court not to apply

8  California duty to indemnify law, at one point even going so far as to claim that the Court is

9  precluded from doing so.

10    The Trustee is simply wrong.  As the Court noted in its prior order, even "following the

11  insurer's refusal to defend, **the insurer may litigate** in a subsequent action . . . whether the policy

12  covered the liability underlying the settlement." (emphasis added).[1]  "An insurer must indemnify

13  the insured against judgments based on claims **covered** by the insurance policy." (emphasis in

14  original).[2]  The Trustee has acknowledged that nearly all of the claims at issue fall outside the

15  scope of the Essex policy.[3]  Essex has shown that the single remaining claim upon which the

16  Trustee pins his hopes for indemnity coverage—the looting of the trust account:  (1) does not fall

17  within the coverage grant for professional services; and (2) is in any event excluded since every

18  actual fact shows that it  arose out of intentional, wrongful conduct.  Essex is entitled to summary

19  judgment that dismisses the Trustee's claims for indemnity coverage and bad faith.

20  **I.    ESSEX HAS NO DUTY TO INDEMNIFY**

21    **A.    The Law Of The Case Doctrine Does Not Apply**

22      **1.    The  Duty To Defend Ruling Does Not Control The Duty To Indemnify Issue Now Before The Court**

23

24    Since the Trustee can't meet his burden of proof on coverage, he argues the previous

25  duty to defend ruling as the "law of the case."

26

27  [1] Dkt. 57, at 15, lns. 19-23, citing *Everett Assocs., Inc. v. Transcon. Ins. Co.*, 159 F.Supp.2d 1196 (N.D. Cal. 2001) *aff'd* 35 F.App'x 450 (9th Cir. 2002).
[2] Dkt. 57, p. 15, lns. 11-12, citing *Buss v. Superior Court*, 16 Cal. 4th 35 (1997).

28  [3] [SUF 13, 14, 16, 17, 18 (Trustee's testimony)]

1

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

It's not. It decided a wholly different issue: Whether a potential amendment to the complaint might implicate the possibility of coverage.  Dkt. 57, at 8, lns. 15-18. ("Although the complaint alleged an intentional tort, **it could have been amended**, in light of the facts alleged, to seek damages for negligence.  Necessarily, therefore, **the action presented the potential of a judgment based on unintentional conduct**.") (emphasis added).

The Trustee never amended.  The Court never found that the Trustee's claims in fact arose out of unintentional conduct.  And, at this point, the issue isn't even relevant.

At this juncture, the Trustee must first prove actual coverage, *i.e.,* that the Trust Account shortage is factually tied to the actual rendition of a professional service.  Only at that point would the Court even begin to address any "unintentional" issue; because the Court would then have to examine the exclusions. A duty to defend ruling that is expressly based upon the "potential" for coverage is not law of the case to decide the subsequent question of "actual coverage."

## 2.      Fed. R. Civ. P. 54(b) Controls

Even if the law were other than it is and any aspect of the Court's duty to defend ruling somehow impacted the coverage question, that ruling would not be binding at this point:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. Fed. R. Civ. P. 54(b)[4]

## 3.      The Cases Relied Upon By The Trustee Do Not Support His Argument

In urging "law of the case," the Trustee cites three Ninth Circuit decisions.   None supports him.

*Hydrick v. Hunter* has suffered two deaths.  The initial decision, cited by the Trustee as

---

[4] *See Hartford Fire Ins. Co. v. Herrald*, 434 F.2d 638, 639 (9th Cir. 1970) (under Rule 54(b), an order that is not a final decision "is subject to revision at any time before the entry of judgment."); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 2004 WL 5234563, at *3 (C.D. Cal. Mar. 1, 2004) ("partial summary judgment ruling 'was subject to revision at any time before the entry of judgment.'").

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  455 F.3d 676 (2006), was first withdrawn and superseded (500 F.3d 978 (9th Cir. 2007)), and

2  then vacated by the United States Supreme Court.  556 U.S. 1256 (2009).  And, even the

3  original decision did not apply "law of the case."  466 F.3d 676, at 687-88.

4       *United States v. Maybusher*, 735 F.2d 366 (9th Cir. 1984): (1) discussed the law of the

5  case doctrine; (2) held that it did not apply; and (3) pointed out that it is "not a limitation of their

6  [*i.e.,* courts'] power" to reopen questions formerly decided. 735 F.2d at 370.

7       *Moore v. James H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) did apply a "law of

8  the case" doctrine – but not the doctrine urged by the Trustee.  *Moore* stated the unremarkable

9  proposition that a district court could not, on remand, re-examine a prior Ninth Circuit ruling in

10  the same case.  682 F.2d, 830, at 833-834.

11       **B.    The Fabricated Settlement Value**

12       The Trustee works at length to defend his "fill in any number you want" settlement by

13  invoking Judge Tevrizian's commendable reputation.  No question, Judge Tevrizian was a fine

14  jurist and is a fine mediator – who obtained $25,000 from the Rothmans and $475,000 from

15  Scottsdale – and who had moved on to other cases by the time of counsel's *post hoc* invention of

16  the $4.3 million face amount of the settlement.

17       Faced with unrebutted evidence that the settlement figure simply was pulled out of the

18  air, the Trustee attempts to fall back upon the good faith settlement determination.  For multiple

19  reasons, this does not help him.  First, as even the cases that the Trustee cites make clear, the

20  good faith hearing does not bind Essex.  *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 730

21  (2002); *Pruyn v. Agricultural Ins. Co.*, 36 Cal. App. 4th 500, 527 (1995).  Second, those same

22  cases, in fact, counsel against an insurer's appearance at a good faith hearing – and Essex

23  certainly had no reason to object to the Rothmans' obtaining a release from their substantial

24  uninsured exposure.   Third, the purpose of a good faith hearing is to address potential

25  contribution claims; it does not address insurance coverage.[5]  Finally, and important in the light

26

27  [5] *See* Emery J. Mishky, Robert Tessier, and Patrick G. Vastano California Code of Civil Procedure Sections 877,
877.5 and 877.6: The Settlement Game in the Ballpark that Tech-Bilt, 13 Pepp. L. Rev. 3 (1986) (These statutes

28  facilitate settlement "by releasing a settling tortfeasor from liability to other tortfeasors after a good faith settlement
has been reached with the plaintiff.").

3

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

of Mr. Rothman's testimony, it is clear from the Trustee's submission and the hearing transcript that the Court was not apprised of all the relevant facts, *i.e.*, that the settlement amount was invented unilaterally. Indeed, in his motion for a good faith settlement determination, the Trustee did not even refer to the $4.3 million figure; he spoke only of the $500,000 cash payment.[6]

The *Pruyn* court warns of the dangers implicit in settlements such as this, in which the policyholder has no personal liability:[7]

> To be sure, a stipulated or consent judgment which is coupled with a covenant not to execute against the insured brings with it a high potential for fraud or collusion. "With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insured's best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages." (*Wright v. Fireman's Fund Ins. Companies*, *supra*, 11 Cal. App. 4th at p. 1023.) Given the accuracy of these observations, a stipulated judgment should only bind an insurer under circumstances which protect against the potential for fraud and collusion.
>
> [*Pruyn*, 36 Cal. App. 4th, at 518.]

This case exemplifies the very dangers of which *Pruyn* warns. The Rothmans pay next to nothing. [SUF 7] The Trustee invents a settlement "amount" after the fact. [SUF 53] And the Trustee now asserts to this Court that his claims against the Rothmans were worth over $8 million (dkt. No. 139, ¶¶ 9, 14), notwithstanding his previous representation at the Court's "good faith" hearing that the "total exposure faced by the [Rothmans]" was "between $2.5 million to $4 million."[8] The juxtaposition of the term "good faith" with any particular number at any given

---

[6] *See* Trustee's Motion for Good Faith Settlement Determination (Dkt. 318, at 8-9), attached as Ex. 7 to the Trustee's RJN (Dkt. No. 143-2, at 352-53). It somewhat boggles the mind that the Trustee can allege the "good faith" of a settlement that seems to have been presented for approval in something less than good faith.

[7] The Rothmans were fully released for an utterly nominal $25,000 contribution – one half of one percent of the invented settlement amount. Stated differently, the invented settlement amount was one hundred and seventy-two times their contribution.

[8] Trustee's Motion for Good Faith Settlement Determination (Dkt. 318, at 11), attached as Ex. 7 to the Trustee's RJN (Dkt. No. 143-2, at 355).

ESSEX'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    time seems to have little meaning for the Trustee.[9]

2    No California court has ever enforced against an insurer a "settlement" reached in this

3    improper fashion.  In fact, no court anywhere has ever permitted a claimant to simply invent

4    settlement "amounts" and impose liability for the invented amounts upon third-parties.

5    **C.    No Law Supports The Trustee's "No Allocation" Argument**

6    The Trustee repeats the argument this Court is bound by the invented settlement, both as

7    to coverage and amount, because the Rothmans and the Trustee did not expressly "allocate" the

8    amount among the multitude of settled claims.

9    The coverage argument fails first:  Numerous cases hold that a non-defending insurer has

10    the right to challenge coverage for a settlement. *Everett Assocs., Inc. v. Transcon Ins. Co.*, 159

11    F.Supp.2d 1196 (N.D. Cal. 2001) *aff'd* 35 F.App'x 450 (9th Cir. 2002).  *See also DeWitt v.*

12    *Monterey Ins. Co.*, 204 Cal. 4th 233, 234, 138 (2012); *Risely v. Interinsurance Exchange*, 183

13    Cal. App. 4th 196, 207-208 (2010).  No case even remotely suggests that a claimant and

14    policyholder may cut off the insurer's rights by the manner in which they document their

15    settlement.

16    Second, how can the Court possibly ascribe meaning to the failure to allocate something

17    that didn't exist?  Since the Rothmans had no input into the Trustee's post-mediation invention

18    of the $4.3 million figure into the settlement, they hardly could have participated with the

19    Trustee in a hypothetical allocation among the settled claims of an amount unknown to them.

20    [SUF 53]

21    Third, the Trustee continues to misinterpret the ruling in *Buss v. Superior Court*

22    regarding reimbursement of non-covered defense costs.  Defense cost reimbursement has nothing

23    to do with the policyholder's duty to prove coverage as the precondition to indemnity for loss:

24    "The insurer's duty to indemnify runs to claims that are actually covered in light of the facts

25    proved."  6 Cal. 4th at 45.

26

27    _____

28    [9] The $2.5 - $4 million valuation was reiterated in the sworn declaration of the Trustee's counsel submitted in support of the good faith motion. Gabriel Declaration (Dkt. 318, at 15), attached as part of Ex. 7 to the Trustee's RJN (Dkt. No. 143-2, at 359).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

29044617v2

Fourth, in contending that his 'no allocation' position is supported by the *Diamond Heights* decision, the Trustee quotes a portion – but only a portion – of this Court's discussion. Here's the Court's full statement about *Diamond Heights*:

> The [*Diamond Height's*] court held that the failure to seek appellate review of the good faith determination barred the insurer's subsequent bad faith and collusion claims. *Id.* at 583. Diamond Heights supports the Trustee's assertion that Essex cannot re-litigate the good faith and reasonableness of the settlement as it cannot reach back without violating due process, **but it does not support the Trustee's theory that Essex must indemnify the entire amount of the settlement**.

Dkt. 57, at 16, lns. 8-11 (emphasis added).  In other words, if *Diamond Heights* is correct, Essex can't seek to overturn the settlement as between the settling parties.  So be it.  That is a far cry from the Trustee's conclusion, contrary to the cases already discussed, that Essex – as a third party – is bound to coverage at all, much less to the invented amount. In any event, the conclusion of the *Diamond Heights* decision upon which the Trustee relies subsequently was expressly "reject[ed]" in *Pruyn*.  *See* 36 Cal. App. 4th, at 524.[10]

## II.    THE TRUSTEE'S "BAD FAITH" CLAIMS ARE WITHOUT MERIT

### A.    The Trustee Fundamentally Misconstrues The Role Of Counsel

#### 1.    The Confusion

The Trustee conflates two separate issues that support the good faith of Essex' claim handling: (1) The "advice of counsel defense"; and (2) the role of counsel in this specific case, even disregarding the "advice of counsel defense."

#### i.    The Advice of Counsel Defense

Reliance upon the advice of counsel is a very strong indicator that an insurer has acted good faith. It generally negates the scienter required for the tort of bad faith, and bars punitive damages. *See* Croskey *et al*., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015),

---

[10] *See also Pacific Estates v. Superior Court*, 13 Cal. App. 4th 1561 (1993) ("Diamond may be subject to question.") citing *Singer Co. v. Sup. Ct.*, 179 Cal. App. 3d 875 (1986) (Nonparties are not bound by a "good faith" determination as between settling parties).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   12:1252 – 1257.

2       The Trustee nevertheless seeks to foreclose Essex from the defense.

3       The Trustee has the full, unredacted, files of Essex and its counsel.[11]  The Trustee is

4   quite willing to cite verbatim, in support of his case, the advice counsel gave Essex about the

5   877.6 settlement hearing.[12] In other words, he is happy to wield the sword – but unwilling to

6   allow Essex the shield, despite paying lip service to the "shield and sword" doctrine (Dkt. 150,

7   at 23, ln. 12).  The Trustee wishes to have his cake and eat it: "The advice I like can be used,

8   that which I don't like stays hidden."

9       While the Trustee cites numerous "advice of counsel" decisions, none endorse what the

10  Trustee does here: introduce the opposing party's attorney-client communications while seeking

11  to preclude the opposing party from citing attorney-client communications.  If the Trustee truly

12  believes that Essex is now barred from presenting evidence of the advice of its counsel, how can

13  the Trustee think it proper for him to quote and argue from that counsel's advice?[13]

14      It is notable as well that the Trustee, having full access to the files, is free to show that

15  Essex ignored the advice of counsel when it denied coverage:  A showing that would support his

16  bad faith claim.  He can't make the showing because that's not what happened.  Thus, his

17  adoption of the sword and opposition to the shield.

18      **ii.        The Other Way that Counsel's Involvement Defeats the "Bad**

19      **Faith" Claim**

20      As has been discussed by Charles Ehrlich, Essex' claim handling expert, the role of

21  counsel in this case supports Essex' good faith even if the advice of counsel "defense" is

22  disregarded.  Mr. Ehrlich explains in his report (Dkt. No. 156):

23      47.  My opinion in this report – that Essex' retention of counsel and counsel's subsequent

24

25  _____

[11]  The Trustee insinuates (Trustee's Opp., pg. 8-9, fn. 2) that Essex has produced less than all of its communications

26  with its counsel – presumably because he was disappointed to find no instance in which Essex deviated from
    counsel's advice.  The Trustee has been provided the complete, unredacted files of Essex and its counsel.  *See*

27  Declaration of Daniel Streeter, ¶¶ 3, 4.
    [12] Essex disagrees that counsel's cited advice helps the Trustee.  To the contrary, it demonstrates Essex' good faith

28  concern not to upset the applecart for the policyholders' settlement.
    [13] As previously stated, the Trustee is free to depose Essex's counsel.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

29044617v2

**ESSEX'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

actions further demonstrate the reasonableness of Essex' claim handling – is a stand-alone conclusion, reached independent of the "advice of counsel 'defense.'" Specifically:

    a.  The retention, actions, and analysis of attorneys Waxler and Murch are evidenced by the correspondence between them and the Trustee's counsel.

    b.  The qualifications of attorneys Waxler and Murch are on the internet.

    c.  The reasonableness of the positions taken by attorneys Waxler and Murch is apparent from review of the correspondence between them and the Trustee's counsel, as well as the cases discussed in that correspondence.

48.  Essex' choice of outside counsel reflects reasonable handling; attorney Waxler and attorney Murch were seasoned insurance coverage lawyers with extensive professional liability experience.

49.  Essex further acted reasonably by having outside counsel engage with the Trustee's counsel throughout the claims handling process.  The correspondence between attorneys Waxler and Murch on the one hand and the Trustee's counsel on the other reveals that:

    a.  Essex' counsel researched the applicable law;

    b.  All California authority, both at the state court level and as interpreted by the federal courts, supported the conclusion that a professional's mishandling of money required to be held in trust was a ministerial act and not "a professional service" under a professional liability policy;

    c.  Essex' counsel thoughtfully analyzed the claim and the law;

    d.  Essex' counsel and the Trustee's counsel had a variety of discussions about the claim and the law;

    e.  Essex' counsel responded to arguments raised by the Trustee's counsel with additional analysis and thoughtful arguments.

**B.    The Trustee's Other "Bad Faith" Arguments Fail**

The Trustee's Opposition says little about his bad faith claims that has not already been

8

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    shown to be meritless, but several points bear brief discussion.

2        One, the Trustee fails entirely to address the "genuine issue" doctrine, most likely

3    because there really is nothing that he can say. The policyholders' own very experienced expert

4    at the least doubted that they were covered under the Essex policy. [SUF 34-37] Even if the

5    policyholders' expert was wrong, his agreement with Essex's coverage determination precludes

6    a finding that there was no genuine coverage issue, and thus eliminates "bad faith." *Chateau*

7    *Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001);

8    *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292 (2000). *See also Safeco Ins. Co. of*

9    *America v. Guyton*, 692 F.2d 551 (1982); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th

10   Cir. 2001).

11        Two, the Trustee does not acknowledge *Chateau Chamberay's* "genuine issue" holding,

12   he prefers to cite the case for a proposition directly contrary to what is actually holds, once

13   again presenting the "quote" that is found nowhere in the text. Trustee's Opp. at 9, lns. 20-21.

14   *Chateau Chamberay* actually compels dismissal of the Trustee's bad faith claim: A court "can

15   conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as

16   there existed a genuine issue as to the insurer's liability." *Chateau Chamberay Homeowners*

17   *Ass'n*, 90 Cal. App. 4th at 347. A genuine issue existed here, without a doubt.

18        Three, the opinion of the policyholder's expert presents a further bar to "bad faith"

19   liability. Requisite to a finding of bad faith is that the insurer's conduct disappoints the

20   reasonable expectations of the policyholder. *Id.* at 346. When the policyholder, an insurance

21   professional himself, consults the professional liability expert in whom he has the utmost

22   confidence, and that expert doubts coverage, how can a denial of coverage defeat the

23   policyholder's reasonable expectations?

24        Four, in contending that Essex "failed to investigate" or complaining that Essex

25   personnel did not contact the Rothmans, the Trustee fails in two respects. First, he makes no

26   showing that any of this invented activity would have revealed anything of relevance

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

29044617v2

whatsoever.[14]  His cavil is but "sound and fury. . . signifying nothing."[15]  Second, he would like to pretend that Essex did not seek the assistance of legal counsel throughout the handling of this matter.  So, the Trustee feigns outrage that an Essex claims examiner did not read the *Utica* decision, but ignores that Essex referred that matter to experienced California counsel for advice – and that counsel addressed the applicability of *Utica* in a lengthy written analysis, which was provided to the Trustee's counsel.  [SUF 51][16]  Similarly, as regards the absence of direct contact between the Rothmans and Essex, the Trustee ignores that the Rothmans tendered the claim through counsel and expected that all communications would be between counsel.  [SUF 26, 27; SAF 11]

Five, the Trustee complains that when his FAC was tendered to Essex, the assigned claim examiner's investigation was "limited to a review of the Trustee's complaint, a review of the policy, and an initial call with the insured's attorney, Mr. Jacobson."  Trustee's Opp. at 32, lns. 8-10.  That, of course, is precisely what California law requires an insurer to do to determine whether a duty to defend exists.  "After receiving a tender of defense, the insurer satisfies its duty to investigate by considering the complaint and the terms of the policy."  *Baroco West, Inc. v. Scottsdale, Ins. Co.*, 110 Cal. App. 4th 96, 103 (2003).  "Under California law, an insurer satisfies its duty to investigate 'by comparing the allegations of the complaint with the terms of the policy.''  *Bock v. Travelers Property Ins. Co.*, 465 Fed. App'x 623 (9th Cir 2012) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993)).[17]  Having concluded that the facts alleged in the FAC, when read in conjunction with the insurance policy's terms, did not give rise to the possibility of coverage, Essex advised the policyholder's counsel that coverage was declined. [SUF 27]  Essex invited that counsel to submit any

---

[14] Contrast, for example, a case in which a property insurer failed to inspect damaged property, and therefore failed to learn a fact critical to coverage.

[15] Shakespeare, *The Tragedy of Macbeth*, Act V, Scene V. (http://shakespeare.mit.edu/macbeth/macbeth.5.5.html).

[16] It takes little imagination to predict that the Trustee would manufacture equal, if not greater, outrage had the claims examiner in Illinois reviewed this Maryland case and relied upon his own analysis rather than retaining expert *California* counsel for a claim governed by *California* law.

[17] *See also American Internat. Bank v. Fidelity & Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (1996) ("More importantly, here there was no failure to investigate. . .The evidence showed that [the insurer] reviewed the [claimant's] complaint and the insurance policy.  The duty of the insurer may be fully met by such a review."); *Beda ex rel. Kanteiko v. Hartford Cas. Ins. Co.*, 2013 WL 755183 (S.D. Cal. Feb. 27, 2013).  In this regard, see also the Expert Report of Charles Ehrlich (Dkt. No. 156).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    additional information believed to support the possibility of coverage – but received no

2    response.  [SUF 28, 32]  It is unclear what exactly the Trustee contends Essex might have failed

3    to investigate when the policyholder's own counsel apparently was unable to provide any

4    additional information that suggested that coverage might have existed.[18]

5       Six, when the Trustee's counsel contacted Essex (nearly a year later), Essex and its

6    counsel carefully reviewed the information provided by the Trustee and responded in detail.

7    [SUF 51]  While the Trustee now exclaims – in an entirely generic fashion – that Essex did not

8    investigate, he never identifies a single fact material to coverage that any additional

9    investigation would have uncovered.  *See Beda*, 2013 WL 755183 at *7 (noting that the insurer

10    had "invited the [policyholder] to provide additional information" but that "for whatever reason,

11    the [policyholder] did not follow up, which suggested, intentionally or not, that further inquiry

12    would yield nothing meaningful.").

13       Seven, it bears repeating that while the Court may grant summary judgment to Essex on

14    the Trustee's bad faith claim, *see, e.g.*, *Chateau Chamberay*, the opposite is not true.  *See*

15    *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (8th Cir. 2002) ("The

16    reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact.").

17    **III.**   **CONCLUSION**

18      **A.**   **Coverage**

19       To resist summary judgment on coverage, the Trustee must: (1) raise a triable issue of

20    fact, (2) supporting his burden of factual proof, (3) that actions he consistently characterized as

21    "looting" are covered by CMM's professional liability policy.

22       He has not done so.

23       He cannot do so.

24       He therefore falls back to the now wholly irrelevant point that the Court found a duty to

25    defend.

26       This is insufficient to defeat Essex' right to summary judgment.

27

28

---

[18] The Rothmans' counsel shared the Essex coverage disclaimer with the Trustee's counsel immediately upon receipt. [SUF 30, 31]  The Trustee also raised no objection to Essex's coverage determination.  [SUF 32, 44]

29044617v2

**ESSEX'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**B.**     **"Bad Faith"**

Even were coverage proven, the Trustee's bad faith claims must be dismissed based upon the genuine dispute doctrine. At the end of the day, the Trustee's bad faith claim boils down to only this: Essex did not agree with his coverage argument – an argument he conceded he cannot win without showing facts that do not exist in this case, *i.e.* that the trust account shortfall arose from "discretionary reserving."  That is far less than what is required to support a "bad faith" claim under California law.

Dated:  August 26, 2016                              Respectfully Submitted,

                                                     Sean M. Hanifin
                                                     LOSS, JUDGE & WARD, LLP

                                                     Daniel C. Streeter
                                                     TROUTMAN SANDERS LLP


                                                     By: /s/ *Daniel C. Streeter*
                                                         Sean M. Hanifin
                                                         Daniel C. Streeter

                                                         *Attorneys for Defendant Essex Insurance
                                                         Company, Inc.*

29044617v2

ESSEX'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 5 Park Plaza, Suite 1400, Irvine, CA 92614

A true and correct copy of the foregoing document entitled **DEFENDANT ESSEX INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 26, 2016,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Larry W Gabriel lgabriel@brutzkusgubner.com, nfields@brutzkusgubner.com
- Daniel C Streeter daniel.streeter@troutmansanders.com, christina.lopez@troutmansanders.com
- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov

        ❑  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On **August 26, 2016,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Maureen A. Tighe
United States Bankruptcy Court
San Fernando Valley Division
21041 Burbank Blvd., Ctrm 302 - Suite 325
Woodland Hills, CA 91367-6606

        ❑  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

        ❑  Service information continued on attached page I

declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| Aug, 26, 2016 | Christina Lopez | /s/ Christina Lopez |
| *Date* | *Printed Name* | *Signature* |